UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANR PIPELINE CO., ET AL.                    CIVIL ACTION

VERSUS                                      NO: 10-2622

LOUISIANA TAX COMMISSION,                   SECTION: "A" (3)
ET AL.


**ORDER**

The following motions are before the Court:  **Motions to Dismiss (Rec. Docs. 30, 33, 132)** filed by Wayne Melancon, et al.,[1] Paul Hargrove, et al.,[2] and Tony Mancuso, et al.;[3] **Motion**

---

[1] Movers on motion to dismiss no. 30 comprise the assessors and ex-officio tax collectors for various parishes throughout the state:  Louis Ackal, Brent Allain, Rodney G. Arbuckle, Rich Bailey, Mary Baker, John E. Ballance, Russell L. Benoit, Bolivar Bishop, Wayne P. Blanchard, Gene P. Bonvillain, Ronnie Book, L. Vernon Bougeois, Jr., Harold L. Brady, Kathryn Broussard, Andy Brown, Emmett L. Brown, III, Robert G Buckley, Lawrence E. Chehardy, Patricia Core, Michael Couvillion, John S. Craft, Becky Crain, Robert J. Crowe, Bobby l. Cudd, Lawrence Desadier, Dirk Deville, Theos Duhon, Rhyn L. Duplechain, Daniel H Edwards, Richard E. Edwards, Jr., Carroll Ellzey, Rodney Elrod, Scott Franklin, Eddie G. Gatlin, Ralph R. Gill, Willie Graves, Robert R. Gravolet, Bobby J. Guidroz, D. Rick Hargis, John Hill, I F Hingle, Jr, Rickey J. Huval, Sr., James A. Johnson, John A. Johnson, Pam C. Jones, Victor E. Jones, Jr., Mona Kelly, Donald G. Kratzer, A. D. Little, Jarrod K. Longman, Joaquin Matheu, Charles M. McDonald, Danny McGrew, Wayne A. Melancon, Renee Mire Michel, Wayne Morein, David A Naquin, Johnny Ray Norman, Geneva F. Odom, Lawrence L. Patin, Guffey Lynn Pattison, Jerry L. Philley, Steve E. Pylant, M. Randall Seal, Randy Sexton, Mark W. Shumate, Deanna K. Smith, Jimmie D. Smith, Jack A Stephens, Jimmy Stephens, Mike Stone, R. Jack Strain, Jr., Jeffery G. Taylor, Ronny Theriot, Royce Toney, Marlene M. Vinsanau, Charles F. Wagner, Jr., Mike Waguespack, Carmon F. Walker, Craig Webre, Baxter W. Welch, Jeffrey F. Wiley, Brian Wilson, Walker Wright,

**for Hearing on Plaintiffs' Request for Preliminary Injunction (Rec. Doc. 36)** filed by plaintiffs ANR Pipeline Co., Southern Natural Gas Co., and Tennessee Gas Pipeline Co.; **Motion for Sanctions (Rec. Doc. 45)** filed by Wayne Melancon, et al.  All motions are opposed.  The motions, set for hearing on the Court's October 27, 2010 and November 10, 2010 hearing dates, are before the Court on the briefs without oral argument.

This action has its genesis in litigation that has proceeded through the state court system for several years.  Plaintiffs are ANR Pipeline Co., Tennessee Gas Pipeline Co., and Southern Natural Gas Co.--interstate pipelines that pass through Louisiana.  Plaintiffs' claims arise out ad valorem taxes imposed under Louisiana law for tax years 1994-2003 and 2004-2009.  ANR, Tennessee Gas, and Southern Natural filed the instant complaint for injunctive relief and damages pursuant to 42 U.S.C. § 1983. Plaintiffs seek *inter alia* to have this Court enjoin ongoing state court proceedings pertaining to the remedy phase of litigation that resolved the 1994-2003 claims as well as ongoing

---

Richard C. Earl, and Michael H. Martin.

[2] Movers on motion to dismiss no. 33 comprise the Louisiana Tax Commission and several of its members:  Paul Hargrove, Belinda B. Hazel, Kenneth P. Naquin, Jr., Pete Peters, and Joey Vercher.

[3] Movers on motion to dismiss no. 132 comprise the assessor and ex-officio tax collector for Calcasieu Parish:  Tony Mancuso and Richard J. Cole, Jr.

state court litigation pertaining to their claims for a refund of taxes paid under protest for tax years 2004-2009.[4]

The Court, having carefully considered the pleadings, memoranda, decisions of the state court, applicable law, and arguments of counsel, is persuaded that Plaintiffs' complaint should be dismissed in its entirety.

I.   **BACKGROUND**

### *Louisiana's Ad Valorem Tax Scheme*

Plaintiffs own *interstate* natural gas pipelines that pass through Louisiana and other states.  Interstate pipelines are regulated by the Federal Energy Regulatory Commission ("the FERC") pursuant to federal law.  In contrast, Louisiana *intrastate* pipelines are located wholly within the state of Louisiana.  La. Rev. Stat. Ann. § 30:503(8) (2007).  Intrastate pipelines are regulated by either the Louisiana Public Service Commission or by the Louisiana Department of Natural Resources depending upon whether or not the pipeline is delivering gas sold to local distributing systems for resale.  La. Const. art IX, § 2(A); La. Rev. Stat. Ann. § 30:551(A) (2007).

The Louisiana Constitution provides the classifications for property subject to ad valorem taxes and the percentages at which the various classifications are taxed.  <u>Transcontinental Gas</u>

---

[4] The tax years involved are 2000 through 2009 for Tennessee Gas and Southern Natural.  For ANR, the tax years involved are 1994 through 2006.

<u>Pipeline Corp. v. La. Tax Comm'n</u>, 32 So. 3d 199, 202 (La. 2010) (citing La. Const. art. VII, § 18(B)).  The classifications pertinent to this case are "public services properties" and "other property."  "Public service properties" are assessed at a rate of 25 percent of their fair market value and "other property" is assessed at a rate of 15 percent of its fair market value.[5]  The local parish tax assessor determines the fair market value of all property subject to taxation within his respective parish except as to public service properties.  La. Const. art. VII, § 18(D).  The fair market value of public service properties is determined by the Louisiana Tax Commission.[6]  <u>Id.</u>  The

---

[5]

The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:

Classifications
1. Land                                      10%
2. Improvements for residential purposes     10%
3. Electric cooperative properties, excluding land  15%
4. Public service properties, excluding land        25%
5. Other property                            15%

The legislature may enact laws defining electric cooperative properties and public service properties.

La. Const. art VII, § 18(B).

[6]

***Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor*** . . . Fair market value . . . shall be determined in accordance with criteria which shall be established by law and which

Commission then allocates the assessed valuation of the public service property pipeline among the local taxing units in accordance with state law.  La. Rev. Stat. Ann. §  47:1855(A) (2006).

Whether a natural gas pipeline is classified as a public service property or other property ultimately depends on which agency regulates the pipeline.  For taxation purposes, the public service property classification includes pipeline companies, La. R.S. § 47:1851(M), but pipeline companies are those that are regulated by either the Public Service Commission or the FERC, id. § 1851(K).[7]  Thus, all interstate pipelines running through

---

shall apply uniformly throughout the state.

La. Const. art. VII, § 18(D) (emphasis added).

[7] Louisiana Revised Statute § 47:1851, Revenue and Taxation--Assessment of Public Service Properties--Definitions provides in relevant part:

K.  "Pipeline company" means any company that is engaged primarily in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this State, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a natural gas company under [federal law].

M.  "Public service properties" means the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airlines, electric membership corporation, electric power company, express company, gas company, *pipeline company*, railroad company, telegraph company, telephone company, and water company.

La. Rev. Stat. Ann. § 47:1851(K), (M) (Supp. 2010) (emphasis added).

Louisiana are classified as public service properties because they are regulated by the FERC.  Likewise, those certain intrastate pipelines who sell to local distributing systems are classified as public service properties because they are regulated by the Public Service Commission (hereinafter "PSC pipelines").  But all other intrastate gas pipelines, _i.e._, those that do not sell to local distributing systems (hereinafter "non-PSC intrastate pipelines"), are classified as other property. Applying the provisions of the state constitution, interstate pipelines and PSC pipelines are assessed at 25 percent of fair market value as determined by the Louisiana Tax Commission, and non-PSC intrastate pipelines are assessed at 15 percent of fair market value as determined by the local parish tax assessors. La. Const. art. VII, § 18(B), (D); La. R.S. § 47:1851(K), (M).

### _Prior Litigation – Tax Years 1994-2003_

During tax years 1994-2003 Plaintiffs paid the disputed portions of their ad valorem taxes under protest because they were convinced that the difference between the 25 percent and 15 percent assessment ratios was discriminatory and unfair.[8]

---

The FERC is the successor agency to the Federal Power Commission referenced in § 1851(K).

[8] ANR began paying under protest in 1994.  Southern Natural and Tennessee Gas began paying under protest in 2000.  (Rec. Doc. 132 at 4).  For the 1994 through 2003 tax years Plaintiffs filed protests to their ad valorem property tax assessments with the Tax Commission, paid their property taxes under protest to the parish and local tax collectors and filed suit for a declaratory

Plaintiffs then filed suit for declaratory judgment and for refunds of the taxes paid under protest in the 19th Judicial District Court for East Baton Rouge Parish ("the 19th JDC").[9] Plaintiffs claimed that the differing assessment ratios (25% vs. 15%) violated the uniformity requirement of the Louisiana Constitution and the equal protection, due process, and commerce clauses of the United States Constitution.  Plaintiffs' claims were premised on the fact that a) the Louisiana Tax Commission had intentionally assessed the PSC pipelines in accordance with the 15 percent rate that applies to intrastate pipelines, i.e., the PSC pipelines were supposed to be assessed at the same 25 percent rate applicable to interstate pipelines but were instead receiving more favorable treatment, and b) Plaintiffs' intrastate natural gas pipeline competitors were assessed at 15 percent of fair market value while Plaintiffs endured the ostensibly more onerous 25 percent rate.

The 19th JDC held a four day bench trial in January 2005 and on March 30, 2005, the court issued written reasons finding the actions of the Commission with respect to PSC pipelines, i.e., assessing them at 15 percent when they should have been assessed

---

judgment and refund of taxes paid under protest under the Louisiana constitutional and statutory provision applicable to public service property taxpayers under La. R.S. § 47:1856.  The only defendant named in the suits was the Tax Commission.

[9] La. R.S. § 47:1856 provides the statutory scheme for challenging assessments imposed by the Louisiana Tax Commission.

at 25 percent, violated the equal protection and due process clauses of the Louisiana and United States Constitutions because of the Commission's disregard of the requirement for uniformity.[10] (Rec. Doc. 1 Exh. A).  The trial court pretermitted decision on the constitutionality of La. R.S. 47:1851(K), specifically whether it violated the federal Commerce Clause.  In doing so the trial court relied upon jurisprudential principles discouraging courts from ruling on constitutional issues unnecessarily.  (Rec. Doc. 1 Exh. A at 9) (citing La. Assoc. Gen. Contractors, Inc. v. New Orleans Aviation Bd., 701 So. 2d 130, 132 (La. 1997)).  Because the court found that the Commission's violation with respect to uniformity entitled Plaintiffs to relief for tax years 1994-2003, it found it unnecessary to decide whether or not La. R.S. § 47:1851(K) was unconstitutional with respect to the refund claims for those years.  (Id. at 9).

As a remedy the Plaintiffs had urged the court to award them a cash refund of the amounts paid under protest, that amount being simply the difference between the assessment at 25 percent versus 15 percent.  However, the trial court was persuaded that the legally-mandated remedy was to have Plaintiffs receive the exact same "favorable" treatment that the PSC pipelines had

---

[10] The 19th JDC referred to these PSC pipelines as "preferred pipelines."  (Rec. Doc. 1 Exh. A at 6).  Plaintiffs had identified 12 PSC pipelines that the Louisiana Tax Commission had intentionally treated as "other property" for tax purposes.  Id. at 7 n.6.

received:  For the tax years at issue, the local assessors were to determine the fair market value of Plaintiffs' property and to reassess it at 15 percent of fair market value.  Plaintiffs were to be refunded any amounts that were overpaid for each year, with interest.  (Id. at 12).  The state court remanded the matter to the Commission with instructions to have the Commission require the local parish assessors to proceed with the reassessments.  Recognizing that state law required that refunds, if any, be completed in a timely manner, the court ordered that any refunds be paid by September 30, 2005.  (Id. at 12).

Plaintiffs appealed the decision.  Plaintiffs challenged the trial court's remedy on numerous grounds but the common thread running through all of their contentions was that the trial court erred by ordering the local assessors to revalue their property, arguing instead that the original assessment by the Louisiana Tax Commission, which Plaintiffs never challenged, should remain undisturbed, and that the 15 percent ratio should apply to that original assessment.  Plaintiffs argued that the trial court's order did not provide meaningful relief because the reassessment procedure could lead to "fixing of values" or inflated assessments by local assessors in order to deprive Plaintiffs of their refunds, or result in hundreds of administrative hearings before parish authorities and further litigation over the revalued fair market values.  Plaintiffs argued that such a

scenario would lead to further violations of their rights, particularly their due process rights.  Plaintiffs argued that the only refund that would provide adequate relief is a full refund of all taxes paid under protest.

The Louisiana First Circuit Court of Appeal decided against Plaintiffs on all issues reasoning that uniformity principles mandated that Plaintiffs' property be valued by the same method applied to their intrastate competitors whose favorable treatment they had been challenging, i.e., valuation as "other property" by the local parish assessor.  ANR Pipeline Co. v. La. Tax Comm'n, 923 So. 2d 81, 93 (La. App. 1st Cir. 2008) ("ANR VI").  The First Circuit concluded that the remedy did not violate Plaintiffs' due process rights because state law provided ample procedural protections for Plaintiffs to object to any assessments.  Id. at 97-99.

Plaintiffs also argued on appeal that the trial court erred by declining to address their Commerce Clause challenges because the judgment of the trial court did not adequately remedy violations of the Commerce Clause.  The First Circuit found no error in that decision.  Id. at 99.  Plaintiffs had filed suit seeking refunds for taxes paid under protest.  To the extent that the plaintiffs were able to obtain adequate relief through reassessment and refund, the trial court did not err in declining to address Plaintiffs' claim that La. R.S. § 47:1851(K) is

unconstitutional.  Id. at 99.

In short, in ANR VI the First Circuit Court of Appeal affirmed the trial court's decision in full except that it extended the deadline by which the Commission would issue refunds.  Id. at 100.  The Louisiana Supreme Court denied Plaintiffs' writ application.  ANR Pipeline Co. v. La. Tax Comm'n, 925 So. 2d 547 (La. 2006).

Plaintiffs petitioned the United States Supreme Court for a writ of certiorari.  Plaintiffs' application presented the following question for review:

> Whether Louisiana violated the interstate pipelines' right under the Due Process Clause to a "clear and certain remedy" for the payment of an unconstitutional tax when Louisiana refused to refund the tax unlawfully collected, and instead in order to lessen or eliminate the refund, ordered a de novo revaluation of taxpayers' property by 52 local assessors.

ANR Pipeline Co. v. La. Tax Comm'n, No. 05-1606, 2006 WL 1662255 (U.S. June 15, 2006).  In support of their application Plaintiffs reurged their argument that they should have been awarded a straight refund of the taxes paid under protest and that the trial court's remedy violated principles of federal law with respect to remedies for unlawfully collected taxes.  Plaintiffs pointed out to the Court the lengthy and potentially costly aspects of the remedy which would likely generate approximately 1500 new proceedings.  Plaintiffs also advised the Court that in addition to getting no refund they faced the real possibility of

11

increased taxes following the reassessment remedy.  Nonetheless, the United States Supreme Court refused to intervene.  <u>ANR Pipeline Co. v. La. Tax Comm'n</u>, 549 U.S. 822 (2006).

Plaintiffs subsequently made at least one more attempt to halt the reassessment process and to obtain a full refund of the amounts paid under protest.  In June 2007 Plaintiffs persuaded the 19th JDC to enjoin the Louisiana Tax Commission from holding revaluation hearings on Plaintiffs' pipelines because the Commission had exceeded the limited time period allowed to complete the refund process.  The trial court also ordered that Plaintiffs receive a complete refund of the taxes paid under protest before any proceedings could continue before the Commission.  The First Circuit vacated that order and instructed that the revaluation proceedings go forward.  <u>ANR Pipeline Co. v. La. Tax Comm'n</u>, 997 So. 2d 105 (La. App. 1st Cir. 2008); <u>ANR Pipeline Co. v. La. Tax Comm'n</u>, 997 So. 2d 92 (La. App. 1st Cir. 2008).

### *Pending State Proceedings – Tax Years 1994-2003*

In early 2006 the local assessors began the revaluation process.  In some parishes Plaintiffs received new tax bills that significantly *increased* their tax liability.  Plaintiffs lodged protests with the local authorities, challenging those reassessments with which they did not agree.  In late 2006 Plaintiffs filed appeals with the Tax Commission in those cases

where they were not satisfied with the results of the reviews conducted by the local parish authorities.[11]

In October 2009, the appeals from the proceedings before the local parish authorities were heard by the Tax Commission and the Tax Commission issued its ruling on November 23, 2009.  The Commission granted Plaintiffs some relief which resulted in the local assessors seeking judicial review, in their home districts, of the actions of the Tax Commission.  Plaintiffs filed exceptions and other responsive pleadings in twenty separate judicial review proceedings in those parishes.  Plaintiffs have been unsuccessful in having those multiple proceedings consolidated in the 19th JDC.

### Pending Litigation – Tax Years 2004-2009

For tax years 2004-2009, Plaintiffs once again paid the disputed portions of their ad valorem taxes under protest and filed suit in the 19th JDC seeking refunds.[12]  (Comp. ¶ 137).  In that litigation Plaintiffs are asserting the same constitutional violations asserted for tax years 1994-2003.  (Id.).  Plaintiffs

---

[11] Pursuant to La. R.S. § 47:1989, the Louisiana Tax Commission conducts public hearings to hear the appeal of any taxpayer or local assessor dissatisfied with the determination of the parish's local board of review.  La. Rev. Stat. Ann. § 47:1989(A)-(B) (2006).  The Tax Commission's decision is final unless appealed to the district court within thirty days.  Id. § 1989(D)(1); La. Rev. Stat. Ann. § 47:1988(A)(1)(a) (2006).

[12] ANR advises that it only challenged the taxes for the 2004 through 2006 years.  (Comp. ¶ 137).

13

contend, however, that it is clear that they have no adequate remedy under Louisiana law.[13]  (Id. ¶ 139).

### *The Federal Complaint*

Plaintiffs filed the complaint *sub judice* on August 9, 2010, along with a request for preliminary injunctive relief. The complaint is styled as one for injunctive relief and damages pursuant to 42 U.S.C. § 1983.  Plaintiffs' complaint in this Court is that the Commission and the local assessors have "perverted and continue to pervert and abuse the revaluation process" in such a manner as to deprive them of most if not all of the refunds to which they believe that they are entitled. (Comp. ¶ 122).  Plaintiffs take issue with the valuation method used by the local assessors and Plaintiffs continue to protest the propriety of having the local assessors revalue their pipelines as part of the remedy phase of the 1994-2003 claims. (Comp. ¶¶ 123-125, 126).  Plaintiffs persist in their contention that the remedy confected by the state court is not adequate and that it has proven to be even more uncertain and inadequate in light of recent developments.  (Id. ¶¶ 127-128). In essence, the "judicially created ad hoc retroactive

_____

[13] For the 2004 through 2009 tax years the plaintiffs did not file protests with the Tax Commission.  However, they paid their taxes under protest and filed suits for declaratory judgment and refund of taxes paid under protest and named the Commission, parish assessors and local tax collectors as defendants pursuant to the provisions of La. R.S. § 47:1856(G).

revaluation and reassessment process" crafted by the state court has turned out to be no remedy at all for their constitutional injuries. (Id. ¶ 128).

In support of their contentions Plaintiffs point out that some of the parish assessors and tax collectors issued new tax bills for the 1994-2003 years pursuant to which Plaintiffs ended up owing an additional $15.7 million in additional taxes. (Comp. ¶ 129). The Commission declared the additional tax bills null and void but then the assessors and tax collectors filed judicial review proceedings contesting the Commission's authority to do so. (Id.).

Further, in October 2009 the Commission held reassessment/refund proceedings, during which it allegedly demonstrated its clear bias, and on November 23, 2009, and January 26, 2010, issued orders in which it refused to determine the fair market value of Plaintiffs' pipelines. (Comp. ¶ 133). Next, the assessors from several parishes each filed separate judicial review proceedings in their home parishes challenging the Commission's determinations in the refund proceedings. Plaintiffs complain that they were required to file exceptions and other responsive pleadings in the twenty separate judicial review proceedings filed in those parishes. (Id. ¶ 134). Plaintiffs allege that they are entitled to a preliminary and permanent injunction ordering the Commission and the assessors to

15

cease and desist from continuing to pervert and abuse the revaluation, reassessment and judicial review proceedings devised by the Louisiana courts.  (Comp. ¶ 140).

Plaintiffs allege that the discriminatory violations of their constitutional rights and the absence of an adequate remedy in the state courts enable them to sue the Commission, assessors, and tax collectors for damages under 42 U.S.C. § 1983.  (Comp. ¶ 141).  Plaintiffs allege that their rights have been violated in the following specific ways:  No Louisiana court reviewing the revaluations will hear Plaintiffs' complaints that the Commission and the assessors' "perversion and abuse" of the revaluation process is a violation of their due process, equal protection, and Commerce Clause rights under the United States Constitution (Comp. ¶ 126); the issuance of additional tax bills by the local assessors and tax collectors is a violation of Plaintiffs' rights to equal protection and due process of law, (Comp. ¶ 129); hearings held before the Tax Commission in October 2009 were biased in violation of Plaintiffs' due process rights (Comp. ¶ 132); because the Tax Commission refused to determine the fair market value of Plaintiffs' property, Plaintiffs have had to face revaluations by the assessors of two to three times their original valuations, in violation of their equal protection and due process rights (Comp. ¶ 133); a number of the district courts in the assessors' home parishes have decided to hear the

assessors' judicial review actions in lieu of transferring them
to the 19th JDC, which is a violation of Plaintiffs' equal
protection and due process rights.  (Comp. ¶ 135).

Plaintiffs pray for the following relief:  a) an injunction
restraining the defendant Commission, assessors, and tax
collectors from proceeding further with the revaluation and
assessment proceedings ordered by the 19th JDC as a remedy for the
1994-2003 tax years; b) an injunction restraining the Commission,
assessors, and tax collectors from proceeding with the 2004
through 2009 cases that Plaintiffs filed in the 19th JDC; c) an
injunction staying the 1994 through 2009 cases, including all
proceedings before the Commission and all state court judicial
review proceedings; d) an order mandating that the sheriffs and
tax collectors holding the taxes that Plaintiffs have paid under
protest for the tax years in question refund all such amounts to
the Plaintiffs, or alternatively, awarding Plaintiffs as damages
for the Commission's, assessors', and tax collectors' violations
of their civil rights under 42 U.S.C. § 1983, the full amount of
the taxes Plaintiffs have paid under protest for those tax years,
with interest, and attorney's fees; e) a damage award of the
amount of attorney's fees and costs that Plaintiffs have incurred
in pursuing their state court remedies; f) an injunction
prohibiting the Commission from continuing to assess for ad
valorem tax purposes Plaintiffs' interstate natural gas pipeline

17

properties at 25 percent of fair market value instead of 15 percent of the fair market value as determined by the Commission; g) an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988 incurred in bringing this action; h) all other relief that the Court deems appropriate.

### *Proceedings to Date in This Court*

When Plaintiffs filed this federal complaint approximately five months ago they sought leave to file a motion for a preliminary injunction and a motion to expedite hearing on the preliminary injunction in order to have it heard prior to the noticed hearing date of September 15, 2010. Plaintiffs sought to have this Court enjoin the proceedings in state court and the determination of their refunds on the basis of the parish assessors' revaluations, as well as all efforts to collect new taxes based on those revaluations for all tax years.

The Court issued written reasons denying the motion for leave and the motion for expedited hearing. (Rec. Doc. 12). The Court explained that it was not persuaded that this case presents an exigency that would compel the Court to take action before the defendants would have an opportunity to respond to the complaint.

The Court also expressed concerns with whether Plaintiffs could establish a substantial likelihood of success on the merits so as to merit emergency relief. The Court explained that the crux of Plaintiffs' complaint is their contention that their

federal rights are being violated by the state court's remedy

which includes having their pipelines revalued by local

assessors.   The Court explained:

> The state court revaluation remedy was upheld by the
> Louisiana courts, and to the extent that Plaintiffs
> believed that the remedy violated their federal rights
> they pursued an appropriate course of action by seeking
> review in the United State Supreme Court.   When that
> Court declined to intervene the decision of the Louisiana
> courts became final.   This Court lacks jurisdiction to
> entertain a collateral attack on state judgments.
> Federal courts are precluded from reviewing issues that
> are "inextricably intertwined" with a state judgment.

(Rec. Doc. 12 at 5) (internal citations omitted).   The Court

advised Plaintiffs that they could of course reurge their motion

when all Defendants have made an appearance.   <u>Id.</u>

Since then Plaintiffs have been in the process of serving

the numerous defendants made party to this suit and most have

made an appearance.

### *Pending Motions*

1.   Defendants move to dismiss the complaint contending

that 1) this Court lacks jurisdiction to entertain a collateral

attack on the on state court judgment pursuant to the <u>Rooker-</u>

<u>Feldman</u> doctrine, 2) Plaintiffs demand for a full refund of all

taxes paid under protest for tax years 1994 through 2003 fails to

state a claim upon which relief can be granted because the claim

is untimely, 3) Plaintiffs' demand for refunds calculated at 15

percent of fair market value as determined by the Tax Commission

fails to state a claim upon which relief can be granted because

the arguments in support have already been rejected by the state courts, 4) Plaintiffs' claims for years subsequent to 2003 fail to state a claim upon which relief can be granted, and 5) Plaintiffs' claims for entry of prospective injunctive relief enjoining the Louisiana Tax Commission from assessing Plaintiffs' public service property at the assessment mandated by Louisiana law are precluded by the Tax Anti-Injunction Act.[14]

2.    Defendants Wayne Melancon, et al. have separately moved for sanctions contending that the claims set forth in Plaintiffs' complaint are not warranted by existing law and that the complaint was brought for an improper purpose.

3.    Plaintiffs have moved to set a hearing date on their request for preliminary injunctive relief.  Plaintiffs advise that all defendants against whom they seek injunctive relief have now been served and most have made appearances.

## II.   **DISCUSSION**

### A.   *Motions to Dismiss*[15]

---

[14] Three separate motions to dismiss have been filed but the motions are virtually identical and therefore will be treated collectively as one.

[15] The foregoing motions are not filed on behalf of all defendants in the lawsuit.  Nonetheless, the Court can dismiss an action pursuant to Rule 12(b)(6) on its own motion so long as the procedure employed is fair.  Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc., 21 F. Supp. 2d 664, 679 (E.D. Tex. 1998) (citing Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998); Guthrie v. Tifco Indus., 941 F.2d 374, 379 (5th Cir. 1991)). Movers' arguments challenging the complaint apply equally to all defendants in the case.

Plaintiffs' complaint is for damages and injunctive relief pursuant to 42 U.S.C. § 1983.  Section 1983 creates a civil action for deprivation of rights secured by the Constitution: "Every person, who under color of any statute . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .  42 U.S.C.A. § 1983 (West 2003).

To state a claim under § 1983 a plaintiff must allege facts tending to show 1) that he has been deprived of a right secured by federal law, and 2) that the deprivation was caused by a person or persons acting "under color of" state law.  Bass v. Parkwood Hosp., 180 F.3d 234, 241 (5th Cir. 1999) (citing Flagg Bros. v. Brooks, 436 U.S. 149 (1978)).  "Under 'color' of law" means under "pretense of law."  Bustos v. Martini Club, Inc., 599 F.3d 458, 464 (5th Cir. 2010) (quoting Screws v. U.S., 325 U.S. 91, 111 (1945)).  A person acts under color of state law if he misuses "power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  Bustos, 599 F.3d at 464 (quoting West v. Atkins, 487 U.S. 42, 49 (1988)).

All of the various parish and state tax officials have been

sued in their *official* capacities only.  By framing the claims against Defendants in their official capacities, Plaintiffs must plead and prove that the various local governments had a custom or policy to discriminate.  <u>Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.</u>, 229 F.3d 478, 483 n.10 (5th Cir. 2000) (<u>citing Monell v. N.Y. City Dep't Soc. Servs.</u>, 436 U.S. 658 (1978)).  Official capacity suits are simply another way of pleading an action against the specific entity of which the officer is an agent.  <u>Id.</u> at 483 (<u>quoting</u> <u>Ky. v. Graham</u>, 473 U.S. 159 (1985)).  Thus, an official capacity action requires more than a deprivation of a federal right--the governmental entity that the official serves is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation.  <u>Id.</u> (<u>quoting</u> <u>Graham</u>, 473 U.S. at 166).  The entity's "policy or custom" must have played a part in the violation of federal law.  <u>Id.</u>

     In that vein, a § 1983 official capacity suit against an officer of the State of Louisiana is in effect a suit against the State of Louisiana.  However, neither the State nor its officials acting in their official capacities are "persons" under § 1983 for purposes of a claim for compensatory damages.  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  State officials in their official capacities, however, are persons under § 1983 when sued for prospective injunctive relief.  <u>Id.</u> at 71 n.10 (<u>quoting</u> <u>Graham</u>, 473 U.S. at 167 n.14; <u>Ex parte Young</u>, 209 U.S.

123 (1908)).

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Lovick v. Ritemoney, Ltd., 378 F.3d 433, 437 (5th Cir. 2004)).  However, the foregoing tenet is inapplicable to legal conclusions.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Id. (citing Bell Atlantic Corp. v. Twombly, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.  Gentilello v. Rege, -- F.3d --, No. 09-11213 2010 WL 4868151, at *2 (Dec. 1, 2010) (quoting Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008)).  To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face."  Id. (quoting Iqbal, 129 S. Ct. at 1949).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The Court

does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." Id. (quoting Plotkin v. IP Axess, Inc., 407 F.3d 690, 696 (5th Cir. 2005)).  Legal conclusions must be supported by factual allegations.  Id. (quoting Iqbal, 129 S. Ct. at 1950).

Furthermore, federal courts have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss or remand any action if jurisdiction is lacking.  Giannakos v. M/V Bravo Trader, 762 F.2d 1295, 1297 (5th Cir. 1985) (citing Fed. R. Civ. P. 12(h)(3); In re Kutner, 656 F.2d 1107, 1110 (5th Cir. 1981)); 28 U.S.C.A. § 1447(c) (West 2006).  The question of subject matter jurisdiction can never be waived nor can jurisdiction be conferred by consent of the parties.  Id. (citing C. Wright A. Miller & E. Cooper, Fed. Prac. & Proc. § 3522 (1984)).

### *Tax Years 1994-2003*

Plaintiffs' refund claims for tax years 1994-2003 culminated in a final judgment from a Louisiana state court--in ANR VI the Louisiana First Circuit Court of Appeal affirmed the trial court in all relevant respects and the Louisiana Supreme Court and United States Supreme Court denied review.  As this Court noted when it denied Plaintiffs' motion for leave to move for a preliminary injunction, the existence of that final judgment potentially triggers application of the Rooker-Feldman doctrine,

24

which bars lower federal courts from exercising appellate jurisdiction over state court judgments.  Defendants urge a broad application of the doctrine such that all of Plaintiffs' claims with respect to the 1994-2003 tax years are subject to dismissal for lack of jurisdiction.  Plaintiffs, on the other hand, contend that the doctrine is not so broad so as to reach the specific claims that they assert in this case: 1) Commerce Clause claims that the state court specifically declined to address in its decision, and 2) due process claims caused by the assessors having filed 20 separate judicial review proceedings--conduct that occurred *after* the state court judgment became final.

The Rooker-Feldman doctrine derives its name from two Supreme Court cases:  Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  Both cases involved plaintiffs who lost in state court but later filed suit in federal district court seeking to reverse or modify the adverse state court judgment. In both cases the Supreme Court held that the federal suits were impermissible because appellate jurisdiction to reverse or modify a state court judgment lies exclusively in the Supreme Court. Rooker, 263 U.S. at 415; Feldman, 460 U.S. at 486-87.  Federal district courts are empowered to exercise original, not appellate jurisdiction.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005).  The complaints in Rooker and Feldman

25

invited the lower federal courts "of first instance" to review and reverse unfavorable state-court judgments.  Id.  Those suits were therefore necessarily dismissed for lack of subject matter jurisdiction.

Exxon Mobil is the Supreme Court's most recent opinion regarding the Rooker-Feldman doctrine and its application.  The Court explained that the doctrine is confined to cases brought by "state court losers" complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  Exxon Mobil, 544 U.S. at 291.  It does not function to supplant the doctrine of res judicata.[16]  Id.

Importantly, Exxon Mobil did not disturb two very important aspects of the Rooker-Feldman doctrine:  First, the doctrine applies not only to claims actually litigated but to those that are "inextricably intertwined" with the state court judgment. Exxon Mobil, 544 U.S. at 286.  Thus, Rooker-Feldman continues to

---

[16] Although Exxon Mobil was the first decision since Feldman in which the Court addressed the doctrine in depth, the decision is really quite unexciting.  In Exxon Mobil, the Third Circuit had applied Rooker-Feldman to dismiss a case for lack of jurisdiction when parallel state court proceedings resulted in a final judgment.  The Supreme Court reversed, recognizing that the procedural posture at issue might properly trigger the application of res judicata but certainly not the Rooker-Feldman doctrine.  Exxon Mobil, 544 U.S. at 292-93.  Thus, while the opinion arguably reined in the doctrine, it did so only with respect to a procedural posture to which the Court had never applied the doctrine and to which res judicata had traditionally applied.  Exxon Mobil did nothing, however, to contract the root principles of the Rooker-Feldman doctrine

preclude review where "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." MAPP Constr., LLC. v. M&R Drywall, Inc., 294 Fed. Appx. 89, 91 (5th Cir. 2008) (quoting Brown & Root v. Breckenridge, 211 F.3d 194, 202 (4th Cir. 2000)).  But the doctrine will not apply where a plaintiff presents an "independent" claim even it is one that denies a legal conclusion that the state court has reached.  Exxon Mobil, 544 U.S. at 293. In such a case, claim or issue preclusion may bar the claim but subject matter jurisdiction will exist.  Id.

The second aspect of the Rooker-Feldman doctrine that Exxon-Mobil did not impugn is that identity of the parties is not necessary for its application.  See Rooker, 263 U.S. at 414.[17] Thus, the Rooker-Feldman doctrine is distinguishable from claim preclusion in this respect.

**1.   Commerce Clause Claims**

With this framework in mind the Court turns it attention to the case at hand.  It is beyond dispute that Rooker-Feldman deprives this Court of jurisdiction to revisit the state court's disposition of Plaintiffs' *uniformity* claims for years 1994

---

[17] In Rooker, the plaintiff had sued two additional defendants who had not been parties to the state court lawsuit and therefore were not parties to the state court judgment. Other courts have expressly recognized that Rooker-Feldman is not rendered inapplicable simply because the plaintiff chooses to sue other defendants in the federal lawsuit.  Bass v. Butler, 116 Fed. Appx. 376 (3rd Cir. 2004).

through 2003 *including the appropriateness of the revaluation remedy crafted by the state court*.  Plaintiffs fought the state court's remedy through the appeal process arguing all the while that the revaluation remedy was a violation of their constitutional rights and that the only acceptable remedy would be a full refund of the taxes paid under protest and being held in escrow.  No court sided with Plaintiffs on this issue and the United State Supreme Court declined to intervene.  Thus, notwithstanding Plaintiffs' exasperation with revaluation remedy, the principles of <u>Rooker-Feldman</u> deprive this Court of jurisdiction to revisit the appropriateness of the revaluation remedy vis à vis the 1994-2003 uniformity claims.  On this point Plaintiffs do not disagree.

The more challenging question is whether those same principles deprive the Court of jurisdiction over Plaintiffs' Commerce Clause claims vis à vis the 1994-2003 tax years, <u>i.e.</u>, that Louisiana's tax scheme is facially discriminatory and is per se invalid because it discriminates against interstate commerce. Plaintiffs' originally raised this claim in the 19th JDC litigation and the constitutionality of La. R.S. § 47:1851(K) was squarely before the state court.  Nonetheless, the state court found it unnecessary to decide this claim and expressly declined to address it because the court was persuaded that Plaintiffs' could be afforded full relief based on the uniformity violations

28

that the court had found.  The question then is whether
Plaintiffs can now, consistent with Rooker-Feldman, cull the
Commerce Clause claim from the now-final state court case and
file it anew in this Court in order to circumvent the state
courts and obtain the very remedy that the state courts declined
to award.

     The answer to that question is not resoundingly clear under
the law in this circuit.  In fairly recent unpublished decisions,
the Fifth Circuit has applied Rooker-Feldman so as to bar
unlitigated federal claims regardless of whether the claims arose
before the state court issued its judgment, MAPP Constr., 294
Fed. Appx. at 91-92, or after the judgment issued, Fahrenholz v.
Dardenne, 337 Fed. Appx. 439 (5th Cir. 2009).  However, other
circuits having directly addressed the issue have concluded that
Rooker-Feldman is not applicable where the state court declines
to address a federal claim.  See, e.g., Simes v. Huckabee, 354
F.3d 823 (8th Cir. 2004).  Thus, the fact that Plaintiffs'
Commerce Clause claims were not decided is not necessarily
determinative in this circuit of whether Rooker-Feldman applies.[18]

_____

     [18] The Court notes that it would be a mischaracterization to
describe Plaintiffs' Commerce Clause claims as "unlitigated"
because Plaintiffs had fully presented those claims to the state
court and Plaintiffs' own assertions in this Court are that they
provided the state court with ample evidence to conclude that the
Louisiana tax scheme impermissibly burdens interstate commerce.
Thus, Plaintiffs' Commerce Clause claims are undecided but not
unlitigated.  In Mapp Construction and Fahrenholz, supra, the
federal claims at issue were not simply undecided but wholly
unlitigated yet the Fifth Circuit nonetheless found Rooker-

While it is beyond dispute that review of a "decided" federal claim would be barred by Rooker-Feldman, this Court is not persuaded that Plaintiffs can escape Rooker-Feldman simply because the state court declined to rule on their federal claim. Even after Exxon Mobil it is clear that Rooker-Feldman is broader than simple issue preclusion because it deprives the Court of jurisdiction of a constitutional claim that is "inextricably intertwined" with the state court judgment.  The question is whether Plaintiffs' Commerce Claims vis à vis the 1994-2003 tax years presents an issue such that "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it," or whether the Commerce Clause claim constitutes an "independent" claim such that it might deny a legal conclusion that the state court has reached but not depending on a determination that undermines the state court judgment, i.e., is inextricably intertwined.  Thus, the fact that the state court did not decide Plaintiffs' Commerce Claim merely leaves open the possibility that Rooker-Feldman may not apply but it is not conclusive.  And as noted above, the fact that the assessors were not parties to the state court judgment does not preclude application of Rooker-Feldman to these same plaintiffs' claims.[19]

---

Feldman to apply.

[19] The Court cannot help but note the following irony in this situation:  Rooker-Feldman has always applied to state court

The question then is whether Plaintiffs' claim for a § 1983 violation arising out of an allegedly unconstitutional state statute applied in 1994-2003 is inextricably intertwined with their suit for a refund of taxes paid under protest for those years.  Ignoring Mapp and Fahrenholz, which would suggest that in this circuit the claims would be considered to be inextricably intertwined, the Court notes that in the Feldman decision itself the Supreme Court specifically recognized that the plaintiffs' general challenge to the state law at issue could proceed because it did not require review of the state court's judicial decision that had been rendered in that particular case.  460 U.S. at 487. Although this Court cannot envision any scenario where the remedy would not be problematic--assuming *arguendo* of course that the remedy for a Commerce Clause violation would differ from the remedy imposed by the state court, a proposition that is by no means clear,[20]--perhaps this Court could adjudicate a § 1983 claim related to Commerce Clause violations for tax years 1994-2003 and

"losers" but Plaintiffs herein actually prevailed in state court even though the remedy imposed has clearly left them believing that they lost.

    [20] It is important to note that the remedy Plaintiffs seek is a category of tax treatment that no other pipeline in Louisiana receives.  Plaintiffs want to be "public service properties" such that the Louisiana Tax Commission and not the local assessors will determine fair market value, and they want to be "other properties" for purposes of receiving the 15 percent assessment. The full refund remedy that Plaintiffs want would be based on this "hybrid" type of tax assessment that no other entity receives under Louisiana law.

fashion a remedy without offending <u>Rooker-Feldman</u>.  After all, the state court's decision was based solely on non-Commerce Clause violations and the remedy imposed was to redress those non-Commerce Clause violations.  So Plaintiff's contention that <u>Rooker-Feldman</u> does not preclude them from bringing their Commerce Clause claims cannot be dismissed out of hand.

That said, even without a <u>Rooker-Feldman</u> problem Plaintiffs' ability to pursue the Commerce Clause claim in this Court is rife with problems the most glaring of which is the timeliness issue. This lawsuit is brought pursuant to § 1983 which borrows its prescriptive period from Louisiana law.  In Louisiana, the one-year prescriptive period for tort actions applies to § 1983 claims.  <u>Burge v. Parish of St. Tammany</u>, 996 F.2d 786, 788 (5th Cir. 1983).  Federal law governs when the claim begins to accrue and that happens when the wrongful act or omission results in damages even though the full extent of the injury is not then known or predictable.  <u>Wallace v. Kato</u>, 549 U.S. 384, 391 (2007).

Plaintiffs filed their § 1983 claim in this Court on August 9, 2010, for Commerce Clause violations that accrued in conjunction with tax years 1994-2003.  Even if those claims remained viable while the state court litigation remained pending, prescription would have started to run again on October 2, 2006--the date that the U.S. Supreme Court denied cert thereby

rendering the state court decision absolutely final.[21]  Thus, the § 1983 claims grounded on Commerce Clause violations occurring in conjunction with tax years 1994-2003 are clearly time-barred.

Plaintiffs take great pains to point out that the source of their injury is the assessors' filing twenty separate judicial review actions challenging the Commission's November 23, 2009, decision and that this occurred well within a year of filing this lawsuit.  Section 1983 claims arising out of the assessors' conduct in late 2009 and early 2010, which will be addressed below, are not time-barred but that conduct did not breathe life back into Commerce Clause claims that originally accrued back in 1994-2003.  Plaintiffs' Commerce Clause claims for tax years 1994-2003 did not arise out of the assessors' conduct in 2009 and 2010, and Plaintiffs' contention that the assessors' conduct itself has resulted in the loss of their right to pursue their Commerce Clause claims is an assertion not supported by the facts.  Plaintiffs cannot look to the assessors' more recent conduct as a means to avoid the timeliness problem under § 1983 for the Commerce Clause claims.

Plaintiffs also point out that the state court only declined to address the Commerce Clause claim because it believed that

---

[21] Under Louisiana law, prescription on a claim is interrupted by filing suit and prescription remains interrupted as long as suit is pending.  La. Civ. Code art. 3462, 3463.  The foregoing discussion *assumes* that Louisiana's tolling rules would apply to a federal § 1983 claim.

Plaintiffs could obtain full relief on the grounds that were decided.  The appellate court affirmed the trial court's decision to pretermit the Commerce Clause claims "to the extent that the plaintiffs may obtain adequate relief through reassessment and refund."  ANR VI, 923 So. 2d at 99.  Plaintiffs contend that the state court remedy clearly has not given them adequate relief.

From Plaintiffs' perspective, it is clear that any remedy that does not give Plaintiffs the full refund to which they believe they are entitled for tax years 1994-2003 is inadequate.  That issue aside, state procedural law may or may not allow the state court to revisit its prior judgment to decide the Commerce Clause claim if it were to determine that Plaintiffs' remedy is now inadequate without such an adjudication.  But what the state courts cannot do is indefinitely toll the statute of limitations on a federal civil rights claim because federal law determines when a § 1983 claim accrues.  Likewise, the timeliness bar does not evaporate simply because Plaintiffs believe that this Court represents their last chance to adjudicate the 1994-2003 Commerce Clause claims.

But even beyond Rooker-Feldman and the statute of limitations problem, Plaintiffs' Commerce Clause claims face other obstacles present in any case in which a plaintiff attempts to circumvent the state courts in order to effect a state tax refund via a federal lawsuit.  First, the Tax Injunction Act, 28

34

U.S.C. § 1341, which is discussed later in this opinion, deprives this Court of jurisdiction to entertain a § 1983 claim in a state tax case where an adequate remedy exists at law.  Nat'l Private Truck Council v. Okla. Tax Comm'n, 515 U.S. 582, 588 (1995) (citing Fair Assessment in Real Estate Assoc., Inc. v. McNary, 454 U.S. 100, 116 (1981)).  Importantly, the adequacy of the remedy turns on whether state law provides *a procedural vehicle* to raise the federal constitutional claims.  Smith v. Travis County Educ. Dist., 968 F.2d 453, 456 (5th Cir. 1992) (citing Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522 (1981); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300-01 (1943)).  Louisiana state law clearly provides such a procedural vehicle and in fact Plaintiffs availed themselves of state court procedures to bring their Commerce Clause claims in the first instance.

Second, a large part of what Plaintiffs seek from this Court in order to effectuate their Commerce Clause challenge is injunctive relief to prevent the State's district courts from going forward with the remedy phase, including the assessors' twenty review proceedings.  The Anti-Injunction Act, 28 U.S.C. § 2283, governs whether a district court can properly enjoin pending state court litigation.  Newby v. Enron Corp., 338 F.3d 467, 473 (5th Cir. 2003).  The Anti-Injunction Act provides:

> A court of the United States may not grant an injunction
> to stay proceedings in a State court except as expressly
> authorized by Act of Congress, or where necessary in aid

of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C.A. § 2283.  Because the Anti-Injunction Act serves as a general prohibition on a federal court's ability to grant an injunction to stay proceedings in state court, one of the Act's three enumerated exceptions must apply in order for an injunction to issue.  See Blanchard v. Park Plantation, LLC, 553 F.3d 405, 407 (5th Cir. 2008).  None of the Act's exceptions are even arguably applicable in this case.

Finally, the comity doctrine counsels lower federal courts to resist entertaining certain cases that would otherwise fall within their jurisdiction.  Levin v. Commerce Energy, Inc., 130 S. Ct. 2323, 2330 (2010).  The Supreme Court has recognized that the comity doctrine has "particular force" when federal courts are asked to pass on the constitutionality of state taxation of commercial activity.  Levin, 130 S. Ct. at 2330

Of course, the Tax Injunction Act and the even broader doctrine of comity, operate only where the state offers an adequate remedy, and one that is "plain, speedy, and efficient."  Plaintiffs contend that time has proved their assertion that the State offers none of the above because Plaintiffs have yet to receive their refunds.

The fact that the revaluation process in state court is taking longer than Plaintiffs would like does not render the Tax Injunction Act or the doctrine of comity inapplicable.  Likewise,

even if the revaluation process does not ultimately result in actual refunds for Plaintiffs, it does not follow that Plaintiffs had no adequate, plain, speedy, and efficient remedy in the State's courts.[22]  Again, the adequacy of the remedy turns on whether state law provides a procedural vehicle to raise the federal constitutional claims.  And the fact that a federal court remedy might be a "better" remedy is not sufficient to escape the Act or the comity doctrine because a plaintiff is not guaranteed the "best" remedy available.  Bland v. McHann, 463 F.2d 21, 29 (5th Cir. 1972).

Moreover, in Levin v. Commerce Energy, Inc., the Supreme Court very recently addressed the issue of a remedy in conjunction with discriminatory tax treatment.  The Supreme Court explained that when unequal treatment under a state's tax scheme is challenged, "the Constitution calls simply for *equal treatment*," and the Constitution is silent as to how that equality is achieved.  Levin, 130 S. Ct. at 2333 (emphasis in original).  The Court specifically explained that the remedy is an issue of state law that should be decided by the state courts with federal courts generally abstaining from reaching such a holding.  Id. at 2234.  A plaintiff has no entitlement to his

---

[22] The Court notes that Plaintiffs were never guaranteed refunds as part of the state court remedy.  Plaintiffs were to be awarded the difference, *if any*, between the assessments that had been performed under the old unconstitutional system and the new assessments that were to be performed as part of the remedy.

preferred remedy.  Id. at 2336.  And of significant import for Plaintiffs' case in this Court, the Supreme Court expressly recognized that state courts have "greater leeway to avoid constitutional holdings by adopting 'narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests.'" Levin, 130 S. Ct. at 2334 n.7 (quoting Moore v. Sims, 442 U.S. 415, 429 430 (1979)).  One could argue that this is exactly what the state courts have done in this case.

For all of the foregoing reasons, the motion to dismiss is GRANTED with respect to the Commerce Clause claims for tax years 1994-2003.

## 2.  Due Process Claims

The second claim that Plaintiffs assert with respect to the 1994-2003 tax years is that their due process rights were violated when the local assessors filed twenty separate judicial review suits in their home parish district courts.  Plaintiffs complain that a number of the district courts in the assessors' home parishes have decided to hear the assessors' judicial review actions in lieu of transferring those cases to the 19th JDC.[23]

---

[23] Although not alleged in the complaint, Plaintiffs assert in their opposition memorandum that the local courts are charging them exorbitant court costs to appeal in the assessors' suits. None of the local clerks of court are defendants in this case so the Court views this assertion as being just one more example of how Plaintiffs contend that the assessors having filed twenty separate law suits has violated Plaintiffs' rights.

Plaintiffs' § 1983 due process claims do not suffer from the same timeliness problem that affects the Commerce Clause claims because the conduct leading to the due process claims occurred in late 2009 and early 2010, clearly within a year of the filing of the Plaintiffs' federal complaint.  Further, application of the Rooker-Feldman doctrine in this instance is *questionable* because the challenged conduct occurred post-judgment.[24]  The Court is persuaded, however, that the complaint fails to state a claim for relief under § 1983.

The law is now abundantly clear in that legal conclusions pled in a complaint do not bind the Court.  In other words, for purposes of a motion to dismiss the Court will not accept as true Plaintiffs' mere assertion that their due process rights have been violated.  The Court must look to the pleaded facts underlying that contention to determine if Plaintiffs state a claim for relief.  Iqbal, 129 S. Ct. at 1949; Twombly, 550, U.S. at 555.  And of course the Court must view the pleaded facts

---

[24] Application of the Rooker-Feldman doctrine to the post-judgment conduct may be questionable but it is not out of the question.  All of the post-judgment conduct that Plaintiffs complain about is part and parcel of the specific remedy that the state court imposed and the remedy itself is part of the final judgment.  The very conduct that Plaintiffs are complaining about pertaining to the remedy, i.e., multiplicity of proceedings, increased fair market value valuations, and delay were foreseen by Plaintiffs and raised before the First Circuit and the U.S. Supreme Court when Plaintiffs first appealed the remedy.  Arguably, everything that Plaintiffs are complaining about is inextricably intertwined with the very remedy that the Rooker-Feldman doctrine precludes this Court from disturbing.

39

through the prism of the controlling substantive law.

Plaintiffs have sued the local assessors in their *official* capacities which means that for purposes of § 1983 the claims against the assessors are substantively equivalent to a claim against the municipality that each serves.   Turner, 229 F.3d at 483.[25]   As previously explained, official capacity action requires more than a deprivation of a federal right--the governmental entity that the official serves is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation.  Id. (quoting Graham, 473 U.S. at 166).   The entity's "policy or custom" must have played a part in the violation of federal law.  Id.

Notably absent from the complaint is any allegation that the local assessors are acting pursuant to a policy or custom that led to a deprivation of Plaintiffs' rights, much less facts to support an allegation of that nature had one been made.   But the Court will assume that *implicit* in the complaint is the contention that the local parish assessors are policy makers for the parish and that each has a policy or custom of challenging Tax Commission rulings that they believe to be erroneous, unlawful, or unfair.

That said, the facts alleged do not support a claim for a

---

[25] Plaintiffs also sued the Tax Commission members in their official capacities.   Neither states nor their officials acting in their official capacities are "persons" for purposes of § 1983.   Will, 109 S. Ct. at 2312.

due process violation.  State law gives the local assessors the express right to challenge rulings by the Tax Commission in their home parishes and the assessors are exercising those rights.  See La. R.S. §§ 47:1998-1989.  La. R.S. § 47:1998(A)(1)(a) gives the assessors the right to file suit in their home parishes because that's where the property is located.  No individual assessor has violated Plaintiffs' due process rights by declining to forego his/her own rights under state law in order to accommodate Plaintiffs.  The individual assessors were not required to litigate their claims in a foreign jurisdiction in order to relieve Plaintiffs of the burden of making multiple court appearances.  And the individual assessors were not parties to the original state court litigation in the 19th JDC so their reluctance to file suit in that forum cannot even be construed as an intentional affront to the state court's ruling on the 1994-2003 tax years.  The individual assessors did not violate Plaintiffs' rights by taking advantage of the geographic convenience expressly granted to them under state law.

Moreover, what Plaintiffs are really complaining about is the collective result of the individual and independent local assessors' decisions to challenge the Tax Commission in their home venues.  Plaintiffs do not, however, allege that the local assessors have entered into a conspiracy to deprive Plaintiffs of their due process rights.  The Court is convinced that no one

41

individual local assessor has impinged on Plaintiffs' rights by following state procedural law for challenging rulings of the Tax Commission.  Thus, a due process violation does not result when the collective burden of those individual, non-conspiring assessors' lawful conduct, potentially thwarts Plaintiffs' ultimate goal of receiving a full refund.

Aside from the factual deficiencies in the complaint, Plaintiffs' § 1983 due process claims challenging the post-judgment conduct are surely barred by the Tax Injunction Act, the Anti-Injunction Act, and by principles of comity.  At the end of the day, what Plaintiffs are seeking via this § 1983 claim is to escape the state courts and obtain the full tax refund which they have always believed they are owed for tax years 1994-2003.  The proceedings that they want this Court to enjoin are part and parcel of Louisiana's ad valorem tax scheme.  And the Court can envision no greater violation of the principle of comity than if the Court were to usurp control over state tax litigation pending in at least twenty parishes in a case that the state courts have devoted significant resources to over the years.

For all of the foregoing reasons, the motion to dismiss is GRANTED with respect to the due process claims arising out of the remedy phase for tax years 1994-2003.[26]

---

[26] Plaintiffs' complaint includes references to equal protection violations.  The factual allegations supporting an equal protection violation are even less clear than those that purport to support due process violations.

42

*Tax Years 2004-2009*

Plaintiffs seek to avoid pursuing their tax refunds for years 2004-2009 in the state court litigation that they have already filed.  Based on the results obtained for their 1994-2003 refund suit they believe that such an effort would be futile.

The Tax Injunction Act and the doctrine of comity clearly deprive the Court of jurisdiction over Plaintiffs' tax refund claims for 2004-2009.  The Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, Taxes by States, provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. A. § 1341 (West 2006).  The TIA is jurisdictional in nature and presents a "broad jurisdictional impediment to federal court interference with the administration of state tax systems." Washington v. Linebarger, Coggan, Blair, Pena & Sampson, LLP, 338 F.3d 442, 444 (5th Cir 2003) (quoting United Gas Pipe Line Co. v. Whitman, 595 F.2d 323, 326 (5th Cir. 1979)).  The TIA prohibits not only injunctive relief but declaratory relief when such relief would thwart state tax collection.  Levin, 130 S. Ct. at 2331 n. 4 (citing Calif. v. Grace Brethren Church, 457 U.S. 393, 411 (1982)).  Moreover, the TIA bars a refund suit in federal court even where the state consents to suit in federal court. United Gas Pipe Line Co. v. Whitman, 595 F.2d 323, 324 (5th Cir. 1979) (discussing Louisiana law that allows refund suits to be

43

filed in the courts of the United States).

As previously noted, the TIA operates to deprive the Court of jurisdiction only where the state offers an adequate remedy, and one that is "plain, speedy, and efficient."  Notwithstanding Plaintiffs' protestations to the contrary, Louisiana law does provide such a remedy.  Again, the question is not on whether the remedy is the one that Plaintiffs' prefer and potential "failure" in state court does not render the TIA inapplicable.  Washington, 338 F.3d at 445 (quoting Smith v. Travis County Educ. Dist., 968 F.2d 453, 456 (5th Cir. 1992)).  Rather, the question is whether the state provides a procedural vehicle to challenge the tax and to raise constitutional claims.  Smith, 968 F.2d at 456.  And the adequacy of the state court remedy is not impugned simply because Plaintiffs are certain that the remedy for any violations during the 2004-2009 tax years will be similar to the remedy provided for the 1994-2003 tax years.[27]

For all of the foregoing reasons, the motion to dismiss the claims with respect to tax years 2004-2009 is GRANTED.

**B.   *Motion for Rule 11 Sanctions***

The motion for Rule 11 sanctions is DENIED.

---

[27] In Transcontinental Gas Pipeline, the Louisiana Supreme Court addressed the very Commerce Clause claim that Plaintiffs have raised in their own challenges.  The Louisiana Supreme Court held that La. R.S. § 47:1851(K) & (M) are not facially violative of the Commerce Clause and that the plaintiffs in that case had not demonstrated that the scheme impermissibly burdens interstate commerce.  32 So. 3d at 199.

### C.   *Motion to Set Hearing*

Plaintiffs' motion to set a hearing date on their request for preliminary injunctive relief is DENIED as moot.

Accordingly;

**IT IS ORDERED** that the **Motions to Dismiss (Rec. Docs. 30, 33, 132)** filed by Wayne Melancon, et al., Paul Hargrove, et al., and Tony Mancuso, et al. are **GRANTED**.   Plaintiffs' complaint is **DISMISSED**;

**IT IS FURTHER ORDERED** that the **Motion for Hearing on Plaintiffs' Request for Preliminary Injunction (Rec. Doc. 36)** filed by Plaintiffs is **DENIED** as moot;

**IT IS FURTHER ORDERED** that the **Motion for Sanctions (Rec. Doc. 45)** filed by Wayne Melancon, et al. is **DENIED**.

January 18, 2011

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE